# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| Geismar North America, Inc., f/d/b/a Modern Track Machinery, Inc., | ) ) ) | Civil Action No. 9:20-2190-RMG |
| Plaintiff, | ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| NPD Resources, Inc., | ) ) ) | |
| Defendant. | ) ) | |

Before the Court is Defendant NPD Resources, Inc.'s motion to dismiss the amended complaint for lack of personal jurisdiction. (Dkt. No. 12.) For the reasons set forth below, the motion is granted.

### I.  Background

This is a breach of contract action arising from Plaintiff Geismar North America. Inc. ("Geismar") being engaged in September 2016 by Defendant NPD Resources, Inc. ("NPD") to manufacture a steel motor trolley that was to be sold by NPD to the U.S. Army Corps of Engineers for use in Louisiana. (Dkt. No. 7 ¶¶ 6-7, 9, 11, 13, 17.)  Geismar brings claims against NPD for breach of contract accompanied by a fraudulent act, unjust enrichment and violation of the South Carolina Unfair Trade Practices Act, seeks a declaratory judgment that Geismar has complete ownership of the trolley, and asserts an equitable lien and statutory lien on the trolley.  NPD here moves to dismiss the amended complaint for lack of personal jurisdiction.

### II.  Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to assert by motion the defense of lack of personal jurisdiction.  When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), a plaintiff has "the burden of proving" that jurisdiction exists "by

1

a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of jurisdiction when the court does not conduct an evidentiary hearing). In deciding whether a plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

### III.     Discussion

A district court may assert personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state confers jurisdiction, and (2) the exercise of personal jurisdiction comports with constitutional due process. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001). The South Carolina long-arm statute "extend[s] to the outer limits of the due process clause." *Hidaria, USA, Inc. v. Delo, d.d.*, 783 S.E.2d 839, 542 (S.C. App. 2016); *see also* S.C. Code Ann. § 36-2-803(A) (Supp. 2015). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation omitted).

Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court can

assert general jurisdiction over a corporate entity only when the "continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Thus, general jurisdiction requires a showing "that the defendant's activities in the state" were "continuous and systematic." *Carefirst*, 334 F.3d at 397. Specific jurisdiction is designed to protect a defendant from having to litigate a suit in a forum where it should not have anticipated being sued. *See consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.2d 273, 277-78 (4th Cir. 2009). To determine if specific jurisdiction exists, the court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

The amended complaint alleges that NPD is a Texas organization with its principle place of business in Mississippi. (Dkt. No. 7 ¶ 2.) It also alleges that NPD was "doing business in Beaufort County, South Caroline by virtue of contacts alleged herein." (*Id*.) The contacts alleged therein are emails and telephone calls made by NPD's owner and president to Geismar representatives in South Carolina. (*Id*. ¶¶ 4, 15.) Geismar also alleges that when the trolley needed leak repairs, Geismar sent it from Louisiana to its facility in Beaufort County with NPD's president's knowledge that requiring Geismar to perform the work meant the work would be performed in South Carolina. (*Id*. ¶¶ 12, 15.) Geismar also alleges that NPD's owner and president, plus another corporate representative, traveled to the Geismar facility in Beaufort to inspect the repaired trolley and approve its return to Louisiana. (*Id*. ¶ 14.)

These allegations are insufficient to create a *prima facie* showing that this Court has personal jurisdiction over NPD. Regarding NPD's emails and phone calls from outside South

Carolina directed to Geismar, NPD disputes that the communications were directed to South Carolina and instead contends that they were placed to a Geismar employee in Tennessee with a "901" area code. (Dkt. No. 12 at 3, No. 12-2 ¶ 16.)  Regardless, a court may, consistent with due process, exercise judicial power over a nonresident when the nonresident "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).  But merely feeling the effects of out-of-state conduct is insufficient to establish personal jurisdiction: "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997); *see also Metro. Regional Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 702 (D. Md. 2012) (exercising jurisdiction over corporate defendant that "actively and repeatedly directed electronic activity into [the forum] with the clear intent of engaging in business with [forum] residents").

     Here, NPD's own contacts with South Carolina are insufficient to buttress its alleged electronic communications, even if they were into South Carolina and not Tennessee, as the basis for jurisdiction.  First, NPD's alleged understanding that trolley repairs would occur in South Carolina is not a contact with the forum. *See Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 37 (D. Md. 2010) ("The plaintiff must . . . point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."). Moreover, Geismar's technical supporter told Mr. N. Paul Dardar, NPD's owner, that there was no option but to transport the trolley to South Carolina, stating that Geismar "could only replace the roof back at Geismar's facility in South Carolina and it would have to be shipped there." (Dkt. Nos. 17 at 3, 9 ¶ 10.)

Second, regarding NPD's representatives' visit to Geismar's facility in Beaufort to approve the trolley repairs—which NPD contends that Geismar requested (Dkt. Nos. 12 at 4)—such an isolated one-hour visit (Dkt. No. 12-2 ¶ 12) does not give rise to sufficient contacts with the forum. *See CFA Institute v. Institute of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009) ("Indeed, a single act by a defendant can be sufficient to satisfy the necessary "quality and nature" of such minimal contacts, although "casual" or "isolated" contacts are insufficient to trigger such an obligation.") (quoting *Int'l Shoe*, 326 U.S. at 317-318). In his sworn declaration, Mr. Dardar further affirms that NPD has no customers, clients, employees, offices or property in the forum, nor does it make sales to entities in the forum. (Dkt. No. 12-2 ¶¶ 2-10, 25.) These contentions are contradicted by neither the amended complaint's allegations nor the sworn declarations of Geismar president Alan Reynolds, technical supporter Harold Perry, or sales representative Wade Whitmire. (Dkt. No. 9, 10, 11, 17-1.).

Based on the allegations in the amended complaint and affidavits supplied, the Court finds that Geismar has demonstrated neither that the South Carolina long-arm statute nor the Due Process Clause is satisfied. Geismar has not demonstrated that NPD's contacts with South Carolina were continuous and systematic, nor that the six claims arise out of NPD's activities directed to South Carolina. Therefore, Geismar has not satisfied its burden of demonstrating that this Court has jurisdiction over NPD.

## IV.    Conclusion

For the foregoing reasons, NPD Resources, Inc.'s motion to dismiss (Dkt. No. 12) is **GRANTED**.

**AND IT IS SO ORDERED.**

                                                                             s/ Richard Mark Gergel
                                                                             Richard Mark Gergel
                                                                             United States District Judge

August 19, 2020
Charleston, South Carolina